**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

Case No.: 8:15-CR-208-T-30EAJ

United States of America,

     Plaintiff,

v.

DIPESH PANCHAL,

     Defendant.

_____/

## <u>DEFENDANT'S PETITION FOR WRIT OF CORAM NOBIS</u>

### Background

Dipesh Panchal was charged in the above entitled action with possession of a controlled dangerous substance.  He was represented by counsel, Ronald Kurpiers.

Prior to this arrest, (and after) Panchal had never been arrested before.  He has always been a lawful member of the community and a tax-paying lawful immigrant from India.

From the moment this arrest occurred, Panchal was forthright with Kurpiers, telling him of circumstances that would have negated the necessary *mens rea* to be guilty of the crime charged, but willing to cooperate with the government.   A deal was struck with the government and a 5k letter was filed prior to sentencing.

Panchal told his lawyer of the circumstances under which he immigrated to the United States and stressed the importance of avoiding any negative immigration consequences as a result

1

of any disposition.  This is corroborated by the sentencing memorandum filed by Kurpiers which specifically references dire circumstances in his home country.  More specifically, Kurpiers noted that *if deveported*, **he would face certain death in India due to the fact of his divorce from a previously arranged marriage.**

Prior to the acceptance of the plea deal, Kurpier advised Panchal and his wife, Jill, a U.S. Citizen, that he would never be deported for this crime and he could safely accept this deal.  He also advised Panchal that the government would not support his deportation because of his cooperation and would assist him in getting a visa were it not for the fact that he was already holding lawful status.   Kurpiers wrote a sentencing memorandum seeking a downward departure and probationary sentence.    The plea and sentence were entered in 2016.

The transcript of the judgment entered on December 20, 2016 clearly and unequivocally shows misadvice of counsel occurred and the sentence was imposed based upon this misadvice of counsel.   Portions of that transcript are incorporated into the brief below.  A representation was made that the government would not be deporting him and sentence was specifically imposed pursuant to faulty immigration advice in order to facilitate the agreed-upon goal to avoid deportation.  The sentenced was reduced accordingly as seen in the transcript to reduce the number of days incarcerated to under one year, under the erroneous advice of counsel placed on the record. This was not legally correct as briefed below. The truth is that the immigration and nationality act makes this conviction mandatorily deportable notwithstanding the length of sentence, that was direct and unequivocally wrong legal advice.

For the ten years since, it has seemed, however, to Mr. Panchal that Kurpiers was correct and he facilitated a plea that would avoid deportation  His sentence came and went and he has not had difficulty with immigration to date.  He has been lawfully working and paying taxes as he had been prior to the case, which is the expectation Kurpiers gave him.

2

However, he recently sought immigration advice in order to continue his journey toward becoming an American citizen, when he was led to the undersigned. The undersigned was the first to review the record and tell him that the advice he received from Kurpiers and sentence imposed to allegedly avoid deportation was completely legally incorrect, and deportation was never in question or avoidable after a plea to this crime. Specifically, the crime he pleaded guilty to triggered immediate and mandatory deportation and permanent ineligibility for any type of relief notwithstanding the length of sentence. The fact is that the moment Mr. Panchal goes to renew his status, he will be placed into deportation proceedings without question. Mr. Panchal and his wife both have averred that he never would have entered the plea deal and pleaded guilty and cooperated if he knew that he would face mandatory deportation back to a country where his honor killing death was a cultural certainty. He would have fought the case to trial no matter the risk.

This case occurred after the seminal case of *Padilla v. Kentucky, infra,* was handed down by the United States Supreme Court, placing a duty on counsel to properly advise his client. Here the transcripts corroborate petitioner's sworn recollection, as well as his wife's, that he received patently incorrect advice. **The deal he made to avoid deportation actually guaranteed it.**

For the reasons briefed below, vacatur of this plea and sentence are required pursuant to established U.S. Supreme Court precedent.

3

## **LEGAL STANDARDS**

The All Writs Act, 28 U.S.C. § 1651(a), provides federal courts the authority to issue writs of error coram nobis to redress a fundamental error in a criminal case. *United States v. Mills*, 221 F.3d 1201, 1203 (11th Cir. 2000). Coram nobis relief is appropriate where, as here, the defendant is no longer in custody and a motion under 28 U.S.C. § 2255 is unavailable. *United States v. Peter*, 310 F.3d 709, 712 (11th Cir. 2002) (per curiam). In order to prevail on a petition for writ of coram nobis, a petitioner must show that the error "was of such a 'fundamental character' as to have 'rendered the proceeding itself irregular and invalid.'" *United States v. Peter*, 310 F.3d 709, 712 (11th Cir. 2002) (quoting *United States v. Morgan*, 346 U.S. 502, 509 n.15 (1954)). In addition, the error must not have already been put in issue or passed upon, *Alikhani v. United States*, 200 F.3d 732, 734 (11th Cir. 2000), and "the petitioner [must] present[] sound reasons for failing to seek relief earlier," *Gonzalez v. United States*, 981 F.3d 845, 853–54 (11th Cir. 2020).

The Eleventh Circuit has "assumed but not decided that ineffective assistance of counsel may constitute an error so 'fundamental' as to warrant coram nobis relief." *Rogacheva v. United States*, No. 22-11429, 2023 WL 8270833, at *1 (11th Cir. Nov. 30, 2023) (quoting *Gonzalez v. United States*, 981 F.3d 845, 851 (11th Cir. 2020)). It is axiomatic that the denial of one's Sixth Amendment right to counsel is a fundamental right, as is the requirement that any plea be entered knowingly and voluntarily.

Ineffective assistance claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). To prove ineffective assistance of counsel, a petitioner must show (i) that the attorney's performance was unreasonable under prevailing professional norms, and (ii) prejudice (i.e., a reasonable probability that, but for counsel's errors, a different outcome would have occurred). *Id.*

4

at 687-96.

## LEGAL ARGUMENT

### POINT ONE

### VACATUR IS REQUIRED UNDER SUPREME COURT PRECEDENT

This Court should grant Defendant a writ of coram nobis because (1) ineffective assistance of counsel occurred and is corroborated by the contemporaneous record, (2) the ineffective assistance of counsel has never been put at issue or passed upon, (3) Defendant has sound reasons for not seeking relief earlier, (4)  Defendant would not have pleaded guilty but for counsel's direct affirmative misadvice on the law and would have went to trial; and (5) the interests of justice demand a writ of coram nobis.

In the context of ineffective assistance claims based on misadvice of counsel post March 2010, the seminal cases of *Padilla v. Kentucky* and *Strickland v. Washington* control. *Padilla vs. Kentucky*, 559 U.S. 356 (2010); *Strickland v. Washington*, 466 U.S. 688 (1984).  In *Padilla*, the Supreme Court held that because immigration outcomes are inextricably entwined with the outcome of criminal proceedings, and because of the fundamental importance and potential severity of those immigration outcomes, criminal defense counsel have a Sixth Amendment obligation to advise noncitizen defendants of the immigration consequences of their criminal cases; that obligation includes researching the law as needed to give correct advice.  Giving equivocal advice when certain deportation would follow is deficient.  Padilla at 356.

The pertinent facts faced by the Supreme Court in Padilla are materially indistinguishable from the facts at bar.  Jose Padilla was born in Honduras. Id. 359. He had been living lawfully in the United States, when he was arrested.  Padilla pled guilty to a controlled dangerous substance crime. Id.  Mr. Padilla entered his guilty plea on the advice of

5

his counsel, who not only failed to advise him of the particular consequences of his plea and conviction, but also, as here, assured his client that he would not be deported.  Id. This was, of course, wholly inaccurate advice.   Mr. Padilla's conviction rendered him mandatorily removable from the United States, and permanently inadmissible.  Id. at 356 (*stating that the provision of the INA triggered by the plea to a controlled dangerous substance offense was a virtual certainty and finding that the statute "commanded deportation."*)  Id.   (Emphasis added).

The Supreme Court held that Mr. Padilla's defense counsel's performance was constitutionally deficient under the Sixth Amendment. *Padilla*, at 369. The Court first noted that "deportation is . . . intimately related to the criminal process," and that "changes in our immigration law have made removal nearly an automatic result for a broad class of noncitizen offenders." Id. at 365–66. Moreover, "deportation is a particularly severe 'penalty'" associated with a criminal conviction. Id. (quoting Fong Yue Ting v. United States, 149 U.S. 698, 740 (1893). The Court reviewed "prevailing professional norms," as well as prior caselaw recognizing the importance of preserving a noncitizen defendant's right to remain in the United States or eligibility for relief from removal. Id. at 367–68 (citing, inter alia, INS v. St. Cyr, 533 U.S. 289, 323 (2001)). In ultimately concluding that Mr. Padilla's counsel was ineffective, the Court stated "[t]his is not a hard case in which to find deficiency: The consequences of Padilla's plea could easily be determined from reading the removal statute, his deportation was presumptively mandatory, and his counsel's advice was incorrect." *Id*. at 368–69.   The Strickland court gave us a decisive, two-prong test for ineffective assistance of counsel: 1) a deficient performance; and 2) prejudice. Id.

6

Since Padilla, courts and district attorney's offices around the country have tried to create one-size-fits-all boilerplate language into plea agreements and standard admonishments at change of plea hearings and sentencings. However, when an attorney's misadvice is coupled with equivocal or standardized admonishments, the result is that the client remains (rightly) reliant on what he/she believes is uniquely-tailored advice from his or her attorney.

Judge Hinkle from the Northern District of Florida addressed the issue of standardized forms and equivocal warnings such as telling a criminal defendant a plea "may" have consequences versus a plea "will have mandatory" consequences. He plainly described the difference perfectly: ***"Well, I know every time that I get on an airplane that it could crash, but if you tell me it's going to crash, I'm not getting on."*** <u>United States v. Choi</u>, *Case No. 4:08-CV 00386RH, Transcript, Docket No. 96, at 52 (D. Fla. Sept. 30, 2008)*

In this case, Panchal's attorney did not give him equivocal advice, rather, as corroborated by the December 20, 2016 record, his lawyer told him directly that he would not be deported as a result of the plea deal. This was placed on the record during a joint application to the court, made with United States Attorney. The application confirmed the intent of the parties that the plea deal be made not to include deportation, and the parties moved the court to amend the judgment per the advice of counsel, reducing the sentence 11 days, believing that a sentence under one year would avoid deportation. Also placed on the record was that the Government represented that they would not deport him based upon his continued cooperation. See Transcript in its entirety which pertains exclusively to this issue. The transcript clearly confirms the Strickland and Padilla violations.

Importantly, since 1996, the pertinent portion of the INA was, and still is, succinct, clear, and explicit in defining the concrete removal consequences of crimes relating to the sale of narcotics. See 8 U.S.C. § 1227(a)(2)(B)(i) (*"Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States or a foreign country relating to a controlled substance ..., other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable"*). Additionally, 8 U.S.C. § 1182(a)(2)(A)(ii)(II) *is plain that, any plea, including conspiracy, to a crime involving narcotics trafficking, immediately and forever renders someone inadmissible to the United States.* There are no "maybes" or "discretions" or "potential" for immigration consequences. The consequences were known and concrete.

Of note, this was the same exact portion of the statute contemplated by the United States Supreme Court in Padilla, when determining whether the controlled dangerous substance plea triggered the mandatory consequence of deportation. It found on page 356 that the I.N.A. was clear, succinct and was an easy case to find error because the I.N.A. clearly required mandatory deportation, and in fact it "commanded" it. Padilla at 356.

Here, Petitioner was in the same situation. He was given wrongful advice, stating that the plea deal and sentence would avoid deportation. It would not. In fact, just as in Padilla, the plea to a controlled dangerous substance triggered 8 U.S.C. § 1227(a)(2)(B)(i) which immediately and forever placed Panchal into a category of persons mandatory for deportation. The mistaken advice was confusing the law with a provision of the I.N.A. that pertained to other crimes in which deportability turned on the length of the sentence. As indicated clearly by the relevant statute, such is not the case for CDS-related crimes.

8

Petitioner had a right to rely on her lawyer's advice. <u>*Von Moltke v. Gillies,* 332 U.S. 708, 721 (1948)</u>. "Counsel's concern is the faithful representation of the interest of his client." *Tollett v. Henderson,* 411 U.S. 258, 268 (1973). Thus, counsel must pursue "all reasonable lawful means to attain the objectives of the client." *Nix v. Whiteside,* 475 U.S. 157, 166 (1986); *see also Strickland,* 466 U.S. at 688 ("From counsel's function as assistant to the defendant derive[s] the overarching duty to advocate the defendant's cause ….."). Among other things, counsel must investigate facts relevant to liability and sentencing, *Rompilla,* 545 U.S. at 377; *Wiggins,* 539 U.S. at 521-22; "consult with the defendant on important decisions," *Strickland,* 466 U.S. at 688; "discuss potential strategies with the defendant," *Nixon,* 543 U.S. at 178; and predict the strength of the State's case and the likelihood of conviction, *McMann,* 397 U.S. at 769-71. Finally, this court is subject to *Padilla*, *infra* which in no uncertain terms requires defense counsel to advise of the accurate consequences of a guilty plea for non-citizens. Thus, with regard to guilty pleas, counsel (unlike a court) must investigate and advise the defendant of "the advantages and disadvantages of a plea agreement." *Libretti v. United States,* 516 U.S. 29, 50-51 (1995) (noting that the Sixth Amendment duties of counsel extend beyond "the small class of rights that require specific advice from the court under Rule 11(c)"); *Brady,* 397 U.S. at 754. "Prior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered." *Von Moltke v. Gillies,* 332 U.S. 708, 721 (1948); *McMann,* 397 U.S. at 770-71 (counsel has a Sixth Amendment duty to provide reasonably competent advice on whether to plead guilty); Chin & Holmes, *supra*, at 727.

As in *Padilla*, Panchal's attorney committed ineffective assistance of counsel by affirmatively misrepresenting the immigration consequences of his guilty plea. The moment he pleaded guilty, regardless of the sentence, he was rendered mandatorily deportable and permanently inadmissible. This satisfies the first prong of *Strickland* per se.

Next, to determine whether a defendant was prejudiced by an attorney error, *Strickland* requires courts to undertake an individualized examination of the proceedings in which the error is alleged. *See Strickland*, 466 U.S. at 691–96, 104 S.Ct. 2052; *cf. id.* at 693, 104 S.Ct. 2052 ("[Attorney errors] cannot be classified according to likelihood of causing prejudice."). The prejudice analysis in the context of the plea-bargaining process requires a fact-based evaluation of the weight of the evidence. *See, e.g.*, *Premo v. Moore*, 562 U.S. 115, 129–130, 131 S.Ct. 733, 178 L.Ed.2d 649 (2011) (rejecting a "per se rule of prejudice"). Accordingly, a categorical rule affording dispositive weight to a prior statement is "ill-suited to an inquiry that ... demands a 'case-by-case analysis.' " *Lee*, 137 S. Ct. at 1966 (quoting *Williams v. Taylor*, 529 U.S. 362, 391, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)).

The second prong is satisfied if the petitioner shows a reasonable probability that he would not have pleaded guilty had he known it would lead to removal. *Lee v. United States*, 582 U.S. 357, 363-71 (2017) (holding second prong of *Strickland* satisfied where petitioner had strong connections to this country and no other and the consequences of taking a chance at trial were not markedly harsher than pleading).

Here, Panchal would not have pled guilty if he knew that it would lead to his deportation. His testimony is compelling and logical given the certain penalty of death he would face for violating the cultural law of breaking an arranged marriage, not to mention the fact that over the years, he had re-married a U.S. citizen wife, and had developed a lawful and successful business here. Under those circumstances, it is clear why avoiding deportation was a priority point in plea

negotiations and corroborates circumstances even stronger than the court found acceptable in U.S. v. Lee to corroborate a willingness to reject the deal and go to trial.  In Mr. Panchal's case, it literally was a "life or death" situation even more compelling circumstances than those faced by defendant Lee in U.S. v. Jae Lee, *supra*. (where Lee had been in the country for many years, had children and a business here, but where there was no penalty of death for returning to his home as here).

Being given promises that his plea would not trigger deportation, denied him the knowledge necessary to exercise his decision-making rights as in Lee. He and his wife who was with him at the time of this case, have both affirmed, not illogically, that under the circumstances of his life, he would have faced any consequence and fought for his life at trial to be able to stay in the U.S.

Finally, as in the cases above, petitioner has given a valid reason for not seeking relief sooner.  The simple fact, as corroborated by the December 20, 2016 transcript is that he was told he would not be deported.  Also, as indicated therein, the Government made a direct representation to him that he would not be deported based on his plea deal and even moved the court to reduced his incarceration  time to supposedly ensure that he would not be rendered deportable as a result of this plea.  Though all of that was for naught, as a legal fallacy, it left Panchal with the impression that he had no issue with immigration… until now, when he has discovered the truth looming the entire time after consulting with the undersigned.

"The law does not require a coram nobis petitioner to challenge his conviction 'at the earliest opportunity,' but he must have 'sound reasons for not doing so.'" *Gonzalez v. United States*, 981 F.3d 845, 852 (11th Cir. 2020) (citing *Ragbir v. United States*, 950 F.3d 54, 63 (3d Cir. 2020)). ***"Perhaps having 'no reason' to question bad legal advice because it 'appeared accurate'***

*is a valid excuse for not seeking relief earlier." Id.* (citations omitted). However, "after a petitioner becomes aware that he received incorrect advice about the immigration consequences of his guilty plea . . . he cannot wait to file a coram nobis petition without a sound reason." *Id.* Here, the undersigned represents as an officer of the court that Mr. Panchal retained the undersigned immediately after learning of this fundamental error in the case to pursue this application. There was no delay whatsoever on petitioner's part.

<u>**CONCLUSION**</u>

WHEREFORE, in the light of the clear erroneous advice of counsel, corroborated by the contemporaneous record, and the prejudice suffered by petitioner, who now faces certain deportation and permanent inadmissibility to the United States, without available waiver or exception, Petitioner hereby requests the Court enter a writ of coram nobis vacating his conviction and sentence in the interest of justice and pursuant to standing Supreme Court law.

Stephanie McClure, Esq.
Special Counsel for Petitioner
Law Office of Stephanie McClure, LLC
101 Avenue of the Americas, Floor 9
New York, NY 10013-1905
Phone (office): (646) 417-8380
Email: stephanie@smclawgroup.com

*Attorneys for Petitioner*